**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOMBARDIER TRANSPORTATION** | : | |
| **HOLDINGS USA, INC.,** | : | |
| Plaintiff | : | **No. 2:16-cv-01903** |
| v. | : | |
| | : | |
| **UNITED CHEMI-CON, INC.,** | : | (Judge Kane) |
| Defendant | : | |
| | : | |
| _____ | : | |
| **UNITED CHEMI-CON, INC.,** | : | |
| Third-Party Plaintiff | : | |
| v. | : | |
| | : | |
| **KAWASAKI RAIL CARS, INC. and** | : | |
| **NEW YORK CITY TRANSIT** | : | |
| **AUTHORITY,** | : | |
| Third-Party Defendants | : | |

## MEMORANDUM

Before the Court are: (1) Third-Party Defendant New York City Transit Authority

("NYCTA")'s Motion to Dismiss Third-Party Complaint (Doc. No. 61), and (2) Third-Party

Defendant Kawasaki Rail Cars, Inc. ("Kawasaki")'s Motion to Dismiss Third-Party Complaint

(Doc. No. 58). For the following reasons, the Court will grant the motions to dismiss.

## I. BACKGROUND[1]

Sometime in 2010, Kawasaki contracted with NYCTA to build rail cars for a project

known as the R188 Car Build ("Rail Car Contract"). (Doc. No. 42 ¶ 8.) The Rail Car Contract

required Kawasaki to build 23 rail cars, with NYCTA retaining an option to require Kawasaki to

build up to 120 additional rail cars. (Id. ¶ 9.) Subsequently, Kawasaki, as general contractor,

entered into an agreement with Bombardier for the supply of propulsion systems for 23 new rail

---

[1] The following factual background is taken from the allegations of Plaintiff Bombardier
Transportation Holdings USA, Inc. ("Bombardier")'s First Amended Complaint against
Defendant United Chemi-Con, Inc. ("UCCI"), as well as the allegations of Third-Party Plaintiff
UCCI's Third-Party Complaint. (Doc. Nos. 29, 42.)

cars (the "Kawasaki Subcontract").  (Id. ¶¶ 11-12.)  The Kawasaki Subcontract incorporated the terms of the Rail Car Contract and included an option for Kawasaki to purchase additional propulsion units from Bombardier.  (Id. ¶ 13.)  The Kawasaki Subcontract contained technical specifications for aspects of the propulsion units, including capacitors, a key component of the propulsion systems.  (Id. ¶ 14.)  Specifically, Technical Specification 9.5.3 addressed the capacitors and stated that "Filter capacitors shall be oil filled or electrolytic with 15 years minimum design life." (Id. ¶ 15.)

Bombardier contracted with UCCI by way of purchase orders to design and fabricate capacitors for the Rail Car Project (the "UCCI Subcontract").  (Id. ¶ 17.)  The UCCI Subcontract incorporated the technical specifications in the Rail Car Contract and the Kawasaki Subcontract. (Id.)  Bombardier alleges that UCCI was "aware that the life span for the capacitors was a material term and that Bombardier would not have entered into the UCCI Subcontract if UCCI had not agreed to provide a capacitor with the required lifespan."  (Id. ¶ 18.)  By way of eight purchase orders, Bombardier ordered approximately 5,439 capacitors.  (Id. ¶ 19.)

After UCCI fabricated the capacitors, UCCI shipped them to a Bombardier subcontractor for assembly into a "containment unit," each containing eight capacitors.  (Id. ¶ 20.)  Each rail car contained four containment units, or a total of 32 capacitors in each rail car.  (Id.)  The containment units underwent further assembly by Bombardier to become "weldments," which were then shipped to Kawasaki in Yonkers, New York for inclusion in the rail cars.  (Id. ¶ 21.)

Bombardier alleges that the capacitors began to fail in October of 2015.  (Id. ¶ 22.)  At that time, 31 rail cars contained weldments with capacitors manufactured by UCCI, 99 additional weldments containing UCCI capacitors were delivered but not yet installed, and the remaining capacitors had been delivered to Bombardier's subcontractor for assembly into containment

units.  (Id. ¶ 23.)  As a result, Bombardier alleges that it was forced to retrofit the 31 cars containing weldments using UCCI capacitors and change out the 99 weldment units containing UCCI capacitors.  (Id. ¶ 24.)  Bombardier alleges that it provided UCCI with notice of the failures and that UCCI failed to take remedial action, resulting in damages to Bombardier in excess of $800,000 due to the capacitor failures.  (Id. ¶¶ 24, 26-27.)

On December 22, 2016, Bombardier filed a complaint in the United States District Court for the Western District of Pennsylvania (Doc. No. 1), against UCCI alleging claims of:  breach of express warranty (Count 1); breach of implied warranty (Count 2);  Breach of Contract pursuant to the Pennsylvania Uniform Commercial Code and common law (Counts 3 and 4);  Indemnification by Contract and under common law (Counts 5 and 6);  Unjust Enrichment (Count 7);  and Negligence (Count 8).  UCCI filed its Answer to the Complaint with Affirmative Defenses on March 24, 2017.  (Doc. No. 12.)  Subsequently, Judge Nora Barry Fischer issued a Case Management Order setting case management deadlines, including a deadline of June 2, 2017 for motions to amend or add parties (Doc. No. 24), and simultaneously referred this case to mediation (Doc. No. 25).

On May 31, 2017, without filing a motion seeking leave of court to file a third-party complaint as required by Federal Rule of Civil Procedure 14(a)(1), UCCI filed a Third-Party Complaint against Kawasaki and NYCTA, alleging counts of common law indemnification and contribution against both Kawasaki and NYCTA, because "[i]f the UCC capacitors failed, then the cause of any failure in the UCC capacitors is caused by the propulsion mechanism present in the propulsion system designed by Kawasaki and/or the misapplication of excessive amounts of voltage by NYTA."  (Doc. No. 29 at 2.)

Meanwhile, on June 2, 2017, Bombardier filed a Motion for Leave to File a First Amended Complaint. (Doc. No. 30.) The Court granted Bombardier's motion by Order dated June 13, 2017, and directed the filing of a First Amended Complaint by June 20, 2017. (Doc. No. 38.) On June 15, 2017, Bombardier filed its First Amended Complaint, which asserts the same causes of action contained in its original Complaint, with the addition of some factual allegations. (Doc. No. 42.) UCCI filed its Answer to the First Amended Complaint on July 6, 2017. (Doc. No. 50.)

After the case failed to resolve through mediation, Judge Fischer issued an Amended Case Management Order on July 14, 2017, setting a close of fact discovery date for March 30, 2018. (Doc. No. 52.) On August 17, 2017, Kawasaki filed a Motion to Dismiss the third-party claims asserted against it, with a supporting brief. (Doc. Nos. 58, 59.) In its moving papers, Kawasaki argues that UCCI's claims against it fail as a matter of law because: (1) claims of contribution and common law indemnity are available only between defendants liable to a plaintiff in tort, and Bombardier's claim of negligence against UCCI is barred by the economic loss and gist of the action doctrines; and (2) UCCI does not allege a legal relationship with Kawasaki that is a necessary predicate for an indemnity claim. (Doc. No. 59 at 2.)

On August 18, 2017, NYCTA filed its Motion to Dismiss the third-party claims asserted against it, with a supporting brief. (Doc. Nos. 61, 62.) In its moving papers, NYCTA argues that UCCI's claims against it should be dismissed: (1) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over NYCTA; and (2) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 62 at 2-3.) UCCI filed briefs in opposition to both motions to dismiss (Doc. Nos. 65, 66), and Bombardier also filed briefs responding to both motions to dismiss (Doc. Nos. 64, 69). Kawasaki and NYCTA filed reply

briefs in further support of their motions in late September 2017.  (Doc. Nos. 72, 73.)  On

September 28, 2017, this case was reassigned to the undersigned.  (Doc. No. 74.)  On October

10, 2017, this Court issued an Order providing that all case-related deadlines remained in effect.

(Doc. No. 75.)[2]  The pending motions to dismiss are ripe for disposition.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 14

Federal Rule of Civil Procedure 14 provides as follows:

> [a] defending party may, as third-party plaintiff, serve a summons and complaint
> on a nonparty who is or may be liable to it for all or part of the claim against it.
> But the third-party plaintiff must, by motion, obtain the court's leave if it files the
> third-party complaint more than 14 days after serving the original answer.

Fed. R. Civ. P. 14(a)(1).  The Rule also provides that "[a]ny party may move to strike the third-

party complaint."  Fed. R. Civ. P. 14(a)(4).

In order for a third-party claim to be valid, there must be a basis for liability between the

defendant/third-party plaintiff and the third-party defendant.  See C. Wright, A. Miller, & M.

Kane, 6 Federal Practice and Procedure § 1446 (3d ed.) ("A third-party claim may be asserted

under Rule 14(a)(1) only when the third party's liability is in some way dependent on the

outcome of the main claim or when the third party is secondarily liable to the defending party.").

A defendant may not assert a third-party claim under Rule 14 against a party that is solely liable

to the plaintiff.  See, e.g., Herndon Borough Jackson Twp. Joint Mun. Auth. v. Pentair Pump

---

[2] On February 28, 2018, the parties filed a Joint Motion for Status Conference (Doc. No. 78),
representing that on or about July 7, 2017, the parties participated in a status conference with the
court wherein the parties agreed that, in light of the fact that both Third-Party Defendants
intended to file motions to dismiss, they would not engage in written discovery, other than the
pending discovery requests between Bombardier and UCCI, until the resolution of the motions to
dismiss filed by the Third-Party Defendants.  However, this agreement as to the conduct of
discovery was not memorialized in an order of the Court.  Given the approaching fact discovery
deadline, the parties' joint motion requests a status conference with the Court to discuss the
existing Case Management Order.

Grp., Inc., No. 4:12-cv-01116, 2015 WL 2166097, at *2 (M.D. Pa. May 8, 2015); O'Mara Enter., Inc. v. Mellon Bank, N.A., 101 F.R.D. 668, 670 (W.D. Pa. 1983).

Rule 14 is the proper procedure by which to implead a third-party defendant when "state substantive law recognizes a right of contribution and/or indemnity." In re One Meridian Plaza Litig., 820 F. Supp. 1492, 1496 (E.D. Pa. 1993) (citing Smith v. Whitmore, 270 F.2d 741 (3d Cir. 1959)). Further, "[i]n general, whether a particular third-party defendant may be impleaded is a question which 'rests with the sound discretion of the trial court.'" State Coll. Area Sch. Dist. v. Royal Bank of Can., 825 F. Supp.2d 573, 579 (M.D. Pa. 2011) (quoting Hartford Casualty Ins. Co. v. ACC Meat Co., No. 1:10-cv-1875, 2011 WL 398087, at *1 (M.D. Pa. Feb. 2, 2011)).

## B. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to bring a motion challenging the court's right to exercise personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff must "establish[] jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atl. Resorts, 735 F.2d 61, 66 n.9 (3d Cir. 1984). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Id.

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at

144-45 (quoting <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 316 (3d Cir. 2007) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. <u>See</u> <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two types of personal jurisdiction comport with these notions of due process: specific and general jurisdiction. <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746 (2014). Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" <u>Id.</u> at 754 (citations omitted). General jurisdiction, however, may be exercised by a court when foreign corporations' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Id.</u> (citations omitted). A corporate defendant is usually found to be "at home" in the state of the corporation's place of incorporation or principal place of business. <u>Id.</u> at 760. However, a corporate defendant can sometimes be found to be "at home" in another state where its operations in that state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." <u>Id.</u> at 761 (citation omitted).

**C. Federal Rule of Civil Procedure 12(b)(6)**

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff. Phillips v. Cty of Allegheny, 515 F.3d 234, 231 (3d Cir. 2008). The court's determination on Rule 12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that

party is "entitled to offer evidence to support the claims."  United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 259, 302 (3d Cir. 2011) (internal citations omitted).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III. DISCUSSION

### A.  Requirements of Federal Rule of Civil Procedure 14

Before considering the substantive arguments contained in the Third-Party Defendants' motions to dismiss the Third-Party Complaint, and despite the fact that the issue was not raised by the parties, the Court first addresses whether UCCI's filing of the Third-Party Complaint comports with the requirements of Federal Rule of Civil Procedure 14.  As stated above, Federal Rule of Civil Procedure 14(a)(1) dictates the procedure applicable to use of Rule 14 as follows:

> [a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or party of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving the original answer.

Fed. R. Civ. P. 14(a)(1) (emphasis added).  Upon motion, "[i]t is within the sound discretion of the district court whether to allow a defendant to file a third-party complaint."  Sullivan v. Limerick Golf Club, Inc., No. 06-4680, 2008 WL 2502133 at *1 (E.D. Pa. June 23, 2008) (citing Somportex Ltd. v. Phila. Chewing Gum Corp., 453 F.2d 435, 439 (3d Cir. 1971.

Here, UCCI filed its answer and affirmative defenses to Bombardier's complaint on March 24, 2017 (Doc. No. 12), and filed its Third-Party Complaint on May 31, 2017 (Doc. No. 29), more than 14 days after serving its original answer, without obtaining leave of court to do so.[3]  Accordingly, "[t]he proper response by the third-party defendant in such a case is to move to strike the third-party complaint."  3 James Wm. Moore, Moore's Federal Practice § 14.24 at 14-63 (3d ed. 2013).  Although neither Kawasaki nor NYCTA raised UCCI's failure to comply with Rule 14 by way of a motion to strike under Rule 14(a)(4), instead moving to dismiss the Third-Party Complaint on Rule 12(b)(2) and 12(b)(6) grounds, the mandatory language of Federal Rule of Civil Procedure 14(a)(1) applies here, and UCCI's failure to move as required by the Rule justifies striking the Third-Party Complaint.  Sullivan, 2008 WL 2502133 at *2;  Evans v. Allen-Williams Corp., No. 1988-75, 1997 WL 195449 at *3 n.3 (D. Vi. Mar. 7, 1997) (noting that "a third-party complaint served without leave of court is subject to a motion to strike and that it is within the court's discretion to grant such a motion") (quoting C. Wright, A. Miller & M. Kane, 6 Federal Practice and Procedure § 1454 (2d ed. 1990)).  "[L]itigants must comply with the basic edicts of both Federal Rule 14 [and any applicable local rule] that once a party fails to file a third-party complaint within [the time frame provided by the Rule], the untimely party must

---

[3] The Case Management Order entered by Judge Nora Barry Fischer on April 19, 2017 contains no exception to Federal Rule of Civil Procedure 14's requirement to seek leave of court to file a third-party complaint under these circumstances. (Doc. No. 24.) That Case Management Order provides that "[a]ny motion to add new parties shall be filed by no later than June 2, 2017.  Any motion to amend pleadings shall be filed by no later than June 2, 2017."  (Id. at 3.)  The Local Rules of Court for the United States District Court for the Western District of Pennsylvania contain no rule modifying the dictates of Federal Rule of Civil Procedure 14.

obtain leave from the court in order to file a third-party complaint against a third-party defendant." Roberts v. Leasure, No. 05-3495, 2006 WL 1967335, at *2 (E. D. Pa. July 11, 2006).

Based on the foregoing authorities, the Court would be inclined to strike the Third-Party Complaint due to UCCI's failure to comply with Federal Rule of Civil Procedure 14; however, it declines to do so here, given the somewhat unique procedural posture of this case. Specifically, at the time of the filing of the Third-Party Complaint, this case was assigned to a different judge who subsequently conducted a status conference with the parties (Doc. No. 52), at which the issue was apparently not raised and after which the parties and the court appear to have had a shared understanding that the Third-Party Defendants intended to file motions to dismiss the Third-Party Complaint on substantive grounds, rather than file motions to strike the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14(a)(4) (id.). Accordingly, despite UCCI's failure to comply with Federal Rule of Civil Procedure 14, in light of the unique procedural posture of this case, and the parties' failure to raise any complaint regarding UCCI's delay in asserting its Third-Party Complaint, the Court declines to strike the Third-Party Complaint and will consider the substance of NYCTA and Kawasaki's motions to dismiss.

### B. NYTCA's Motion to Dismiss

As noted above, in its brief supporting its Motion to Dismiss the Third-Party Complaint, Third-Party Defendant NYCTA first argues that this Court lacks personal jurisdiction over it. (Doc. No. 62 at 2.) Specifically, NYCTA maintains that it is a public benefit corporation created under the Public Authorities Law of New York and tasked with operating transit facilities within the New York metropolitan area. (Id.) NYCTA maintains that it has no contacts with Pennsylvania, and because none of the factual allegations giving rise to the Third-Party

Complaint occurred in Pennsylvania, the Court lacks both general and specific personal jurisdiction over it.  (Id.)  In addition, NYCTA argues that UCCI's Third-Party Complaint against it fails to state a claim upon which relief can be granted because: (1)  to the extent UCCI's Third-Party Complaint alleges that NYCTA's alleged negligence caused Bombardier's damages, and not that NYCTA is directly liable to UCCI, UCCI's claims are not permissible under Federal Rule of Civil Procedure 14(a); (2) UCCI cannot state a viable claim for contribution because UCCI's duty to Bombardier arises out of a contractual relationship between those parties, and contribution applies only to the relationship between joint tortfeasors; (3) UCCI cannot state a viable claim for indemnification because there is no legal relationship (contractual or otherwise) between UCCI and NYCTA;  and (4) UCCI's Third-Party Complaint is derivative of Bombardier's contractual relationship with UCCI, so any claims that UCCI may have against NYCTA are barred by the economic loss doctrine and gist of the action doctrine. (Doc. No. 62 at 3.)  The Court first addresses NYCTA's jurisdictional argument.

Pursuant to the legal standards articulated above, NYCTA argues that UCCI's Third-Party Complaint fails to assert any allegations establishing a prima facie case of general or specific jurisdiction over it, pointing out that the Third-Party Complaint is "completely silent on the issue of jurisdiction," and merely "adopts the allegations contained within Bombardier's First Amended Complaint," in which Bombardier alleges that the Court has personal jurisdiction over UCCI.  (Doc. No. 82 at 2.)  Given that fact, and the fact that NYTCA's motion has challenged this Court's personal jurisdiction over it, NYCTA correctly notes that UCCI bears the burden to "establish[] jurisdictional facts through sworn affidavits or other competent evidence," and cannot "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)

motion to dismiss for lack of in personam jurisdiction." Time Share Vacation Club, 735 F.2d at 66 n.9.

In opposition to NYCTA's motion, while Third-Party Plaintiff UCCI speculates about scenarios under which discovery may reveal NYCTA contacts with this forum sufficient to establish personal jurisdiction over it, UCCI fails to even attempt to "establish[] jurisdictional facts through sworn affidavits or other competent evidence," Time Share, 735 F.2d at 66 n.9, as it is required to do when facing a Rule 12(b)(2) motion to dismiss.[4] Despite UCCI's failure to meet its burden, Third-Party Defendant NYCTA in reply proffers the affidavit of Aubrey Douglas, Director of Car Equipment in NYCTA's Department of Subways, in support of its contention that this Court lacks personal jurisdiction over it. (Doc. No. 72-1.)

In his affidavit, Douglas, who states that he has been responsible for managing the Rail Car Contract awarded to Kawasaki (id. ¶ 1), represents that NYCTA is a public benefit corporation organized and existing pursuant to the laws of the state of New York, with a principal place of business located at Two Broadway, New York, New York (id. ¶ 3). He further states that "[u]pon information and belief, Kawasaki is a corporation incorporated under the laws of New York, with its principal place of business located at 29 Wells Avenue, Building No. 4, Yonkers, New York." (Id. ¶ 4.) He states that the Rail Car Contract, awarded to Kawasaki on May 28, 2010, provides that it "shall be deemed to be executed in the City of New York, State of New York . . . and shall be governed by and construed in accordance with the laws of the State

---

[4] Instead, UCCI relies solely on its argument that NYCTA did not discharge its burden to submit "affidavits or other competent evidence" in support of its motion, which UCCI argues relieves it of its burden to produce any such evidence in support of its claim of jurisdiction. However, UCCI misconstrues the burdens applicable to the parties in connection with a Rule 12(b)(2) motion to dismiss. It is Third-Party Plaintiff UCCI's burden to submit "sworn affidavits or other competent evidence" in support of its assertion of jurisdiction in response to Third-Party Defendant NYCTA's motion challenging that jurisdiction, especially where, as here, the Third-Party Complaint (and the Amended Complaint) contain no allegations as to the basis for this Court's personal jurisdiction over NYCTA.

of New York." (Id. ¶¶ 4-5.)  Further, he clarifies that Bombardier is a subcontractor to Kawasaki with no contractual relationship with NYCTA under the Rail Car Contract, which calls for Kawasaki to incorporate the requirements of that contract into its own subcontracts and to manage and control its subcontractors' performance.  (Id. ¶ 8.)  Douglas further provides that NYCTA is similarly not a party to any contract that Kawasaki's subcontractor Bombardier may have with any other third parties, including UCCI, nor was NYCTA involved in any negotiations with Bombardier in connection with the Rail Car Contract.  (Id. ¶¶ 9-10.)

Additionally, Douglas states that "[u]pon information and belief, all pre-contractual negotiations and communications between NYCTA and Kawasaki relating to the [Rail Car] Contract occurred in New York State;" and further, that the Rail Car Contract "requires that monthly project progress meetings be held in New York City and all such meetings were, in fact, held in New York." (Id. ¶¶ 11-12.)  Douglas attests that the Rail Car Contract makes clear that Kawasaki is an independent contractor, explicitly stating "that Kawasaki is not NYCTA's agent, and that no agency relationship between NYCTA and Kawasaki is to be deemed created by the execution of the [Rail Car Contract]," and "that nothing contained therein shall be deemed to give any third party a claim or cause of action against NYCTA."  (Id. ¶¶ 13-14.)  Finally, Douglas attests that, upon information and belief, "NYCTA did not place any advertisement relating to the solicitation of bids for the [Rail Car Contract] in any Pennsylvania publication;" "NYCTA does not maintain any bank accounts in the state of Pennsylvania;" "NYCTA is not registered as a business entity with the Pennsylvania Department of State;" and "NYCTA does not pay any taxes in the Commonwealth of Pennsylvania."  (Id. ¶¶ 15-18.)

In their briefing, both parties appear to accept the fact that specific jurisdiction is the only possible basis for this Court to assert personal jurisdiction over NYCTA, as NYCTA does not

have "affiliations with [Pennsylvania that] are so 'continuous and systematic' as to render [it] essentially at home" in Pennsylvania. Daimler, 134 S. Ct. at 754. As noted above, specific jurisdiction is established where (1) a defendant purposely directs its activities at the forum state; (2) the plaintiff's claim arises out of or relates to at least one of those specific activities; and (3) the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). However, as noted above, UCCI presents no sworn affidavits or other competent evidence to satisfy its burden to establish a prima facie case of personal jurisdiction over NYCTA here, instead arguing that discovery may reveal that NYCTA purposefully directed activities toward Pennsylvania, and that UCCI's claim relates to those specific activities. (Doc. No. 67.)

Upon consideration of the relevant authorities, and the representations contained in the Douglas Affidavit submitted by NYCTA in reply to UCCI's opposition brief, this Court concludes that NYCTA does not have sufficient minimum contacts with the forum state to support this Court's exercise of personal jurisdiction over it. Accordingly, the Court will grant NYCTA's motion to dismiss UCCI's Third-Party Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## C. Kawasaki's Motion to Dismiss[5]

As noted above, in its brief in support of its motion to dismiss, Kawasaki argues that UCCI's claims against it fail as a matter of law because: (1) claims of contribution and common

---

[5] State law governs UCCI's contribution and common law indemnity claims. EQT Prod. Co. v. Terra Servs. LLC, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016). In a diversity action, the Court must apply the forum state's choice of law rules. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007). Under Pennsylvania choice of law rules, a court must first determine if there is an actual conflict between the potentially applicable laws, here, Pennsylvania and New York, as Kawasaki is a New York corporation. Id. at 230. If there are no relevant differences, no conflict exists. Id. Here, both parties agree that there are no material distinctions between Pennsylvania and New York law, and so have applied Pennsylvania law to their analyses. The Court does the same.

law indemnity are available only between defendants liable to a Plaintiff in tort, and Bombardier's claim of negligence against UCCI is barred by the economic loss and gist of the action doctrines; and (2) UCCI does not allege a legal relationship with Kawasaki that is a necessary predicate for an indemnity claim. (Doc. No. 59 at 2.)

In opposition to Kawasaki's motion, UCCI acknowledges that claims of contribution and common law indemnity are available only between joint tortfeasors, but argues that, in the absence of discovery illuminating the basis for Bombardier's claims against UCCI (i.e., whether those claims sound in contract or in tort), it is premature for the Court to make any determination as to the applicability of the economic loss or gist of the action doctrines to Bombardier's tort claims. (Doc. No. 65 at 4.) UCCI maintains that courts routinely deny motions to dismiss premised on the gist of the action or economic loss doctrines prior to discovery because they lack a factual record upon which to make such a determination. As to the existence of a legal relationship between UCCI and Kawasaki that may justify the shifting of any liability from UCCI to Kawasaki pursuant to indemnification, UCCI says only that "[a]ll suppliers of a product in the chain of distribution, whether a partmaker or assembler, are potentially liable in indemnification," citing a Pennsylvania Superior Court case, Burch v. Sears, Roebuck and Co., 467 A.2d 615 (Pa. Super. 1983).

As noted above, in order for a third-party claim to be valid, there must be a basis for liability between the defendant/third-party plaintiff and the third-party defendant. See Wright, Miller & Kane, 6 Federal Practice and Procedure § 1446 (3d ed.) In order to make such a determination as to a basis for liability, the Court refers to Pennsylvania's substantive law governing contribution and common law indemnity claims. EQT Prod. Co., 179 F. Supp. 3d at 493 (citation omitted).

### 1. Contribution and Common Law Indemnity

Under Pennsylvania law, the right of contribution is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S. §§ 8322-8327.  Pursuant to the statute, contribution is available only among joint tortfeasors, who are "two or more persons jointly or severally liable in tort for the same injury to persons or property."  42 Pa.C.S. §§ 8322, 8324(a).  Contribution is not available for breach of contract claims.  EQT Prod. Co. 179 F. Supp. 3d at 493.

By contrast,

> [c]ommon law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant.  It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss.

City of Wilkes-Barre v. Kaminski Bros., 804 A.2d 89, 92 (Pa. Commw. Ct. 2002).  Indemnity "is appropriate when a defendant's liability 'arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party.'" Bank v. City of Phila., 991 F. Supp. 2d 523, 530 (E.D. Pa. 2014) (quoting Morris v. Lenihan, 192 F.R.D. 484, 489 (E.D. Pa. 2000)).  The central focus of common law indemnity is the idea of secondary liability on the part of the party seeking indemnity:

> But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.

Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 371 (1951).  Similar to contribution, common law indemnity is available only for liability sounding in tort, not liability based in contract.  EQT Prod. Co., 179 F. Supp. 3d  at 493-94.

Pennsylvania courts apply two different doctrines to determine whether tort claims that accompany contract claims are permissible as independent causes of action: the gist of the action doctrine and the economic loss doctrine. Bohler-Uddeholm Am Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001).

### 2. Gist of the Action Doctrine

Pursuant to Pennsylvania's gist of the action doctrine,

> an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.

Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). As noted by Kawasaki, "[t]he doctrine seeks to prevent plaintiffs from repackaging breach of contract claims as tort claims." See EQT Prod. Co., 179 F. Supp. 3d at 494. Accordingly, to evaluate the "gist" of claims at issue, courts look to the nature of the duty alleged – if the duty is created by the terms of the parties' contract, then the claim sounds in contract, but if the duty is imposed as a matter of law by virtue of social policy, then the claim sounds in tort. Bruno, 106 A.3d at 67.[6]

### 3. Economic Loss Doctrine

Under Pennsylvania law, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." Werwinski v. Ford Motor Co., 280 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). Under this doctrine, "no cause of action exists for

---

[6] While New York courts have not explicitly adopted the gist of the action doctrine, those courts, like Pennsylvania courts, look to the nature of the duty alleged to see if a tort claim is viable in the presence of a contract. See Clark-Fitzpatrick, Inc. v. Long Island R. R. Co., 516 N.E. 2d 190, 193-94 (N.Y. 1987) (citations omitted) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract.").

negligence that results solely in economic damages unaccompanied by physical injury or property damage." Sunshine v. Reassure Am. Life Ins. Co., 515 F. App'x 140, 144 (3d Cir. 2013).[7]

The gist of the action and economic loss "doctrines are very closely related, and share the common purpose of maintaining the distinction between contract and tort law." Wilmington Fin., Inc. v. Am. One Fin., Inc., No. 06-5559, 2007 WL 2221424, at *2 n.1 (E.D. Pa. July 31, 2007). However, they are distinct, in that the economic loss doctrine "developed in the context of . . . products liability . . . cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." Bohler-Uddeholm Am., Inc., 247 F.3d at 104 n.11. On the other hand, the gist of the action doctrine "is more applicable to non-products liability cases in which the key question is the 'duty owed between the parties,' as opposed to the extent of the property damage." N. H. Inc. Co. v. Dielectric Commc'ns, Inc., 872 F. Supp. 2d 458, 463 (E.D. Pa. 2012) (quoting Laura A. Wagner, Note, The Economic Loss Doctrine: A Recommendation for the Supreme Court of Pennsylvania, 72 U. Pitt. L. Rev. 825, 830 (2011)).

### 4. Discussion

The Court first addresses Kawasaki's argument regarding UCCI's claim for common law indemnification asserted against it. Kawasaki persuasively argues that the Third-Party Complaint "fails to allege any relationship between UCC and Kawasaki from which a common law duty to indemnify could arise." (Doc. No. 59 at 10.) The entirety of UCCI's indemnification allegations against Kawasaki consist of the following: "[i]f the UCC capacitors

---

[7] Similarly, New York's economic loss rule precludes a plaintiff from recovering in tort for economic losses "where a product fails to perform as promised due to negligence in either the manufacturing or installation process." Suffolk Laundry Servs., Inc. v. Redux Corp., 238 A.D.2d 577, 578 (N.Y. App. Div. 1997).

failed, then the cause of any failure in the UCC capacitors is caused by the propulsion mechanism present in the propulsion system designed by Kawasaki"; and "[w]ithout admitting any liability, UCC asserts that, if found liable for Bombardier's damages, such liability was vicarious, passive and secondary and that it was the liability of Kawasaki that was the active, primary and proximate case[sic] of Bombardier's claimed damages." (Doc. No. 29 ¶¶ 10, 12.)

Pursuant to the legal standards articulated above, in order for it to succeed on a common law indemnity claim against Kawasaki, UCCI would have to prove both that Kawasaki was at fault and that UCCI was not, and, therefore, Kawasaki's negligence would provide a full defense to any liability to Bombardier. However, UCCI has not articulated a scenario where it could be held liable to Bombardier for Kawasaki's negligence. If UCCI's negligence contributed to the failure of the capacitors in any way, then common law indemnity is not available to it, "as indemnification is a method of fault shifting, not sharing." Unique Techs., Inc. v. Microstamping Corp., et al., No. 02-cv-6649, 2003 WL 21652284, at *3 (E.D. Pa. Apr. 15, 2003). Moreoever, if UCCI is not found negligent in the failure of the capacitors, then it would be successful in the defense of Bombardier's claims against it, and would therefore have no liability for Kawasaki to indemnify. See EQT Prod. Co., 179 F. Supp. 3d at 495 (granting motion to dismiss third-party common law indemnity claim against third-party defendant where third-party complaint pled no special legal relationship of any kind between third-party plaintiff and third-party defendant that would result in secondary liability to third-party plaintiff for any harm caused by negligence of third-party defendant); Unique Techs., Inc., 2003 WL 21652284, at *3 (concluding that third-party claim for common law indemnity failed because the defendant would either prevail against the plaintiff or be found to have some degree of fault).[8]

---

[8] As noted above, in response to Kawasaki's arguments about the lack of a special relationship supporting an indemnification claim, UCCI argues that "[a]ll suppliers of a product in the chain

Accordingly, UCCI's Third-Party Complaint fails to state a plausible claim for relief for common law indemnity, as it does not plead facts allowing "the court to draw a reasonable inference that the [third-party] defendant is liable" for such a claim. See Iqbal, 556 U.S. at 678 (internal citations omitted).

The Court next turns to Kawasaki's argument regarding UCCI's claim for contribution asserted against it. Kawasaki argues that because contribution is available only between joint tortfeasors, UCCI's claim for contribution against it is dependent on the viability of Bombardier's tort claim against UCCI. (Doc. No. 59 at 5.) Kawasaki argues that Bombardier's negligence claim against UCCI is barred as a matter of law by the economic loss and/or gist of the action doctrines. As noted above, UCCI argues that in the absence of discovery regarding the basis for Bombardier's claims against it, it is premature for the Court to make a determination as to the potential applicability of the economic loss or gist of the action doctrines to Bombardier's tort claims. (Doc. No. 65 at 4.)

However, the Court need not assess whether those doctrines bar Bombardier's tort claims against UCCI at this juncture in order to determine that UCCI cannot maintain a viable claim for contribution against Kawasaki. Because a claim for contribution lies between joint tortfeasors, in order for UCCI to plead a contribution claim raising a reasonable inference of an entitlement to relief against Kawasaki, the Court must examine the nature of the duty between Bombardier and Kawasaki as alleged in the Third-Party Complaint. In this context, the Court finds the district court's reasoning in EQT Prod. Co. v. Terra Servs. LLC, 179 F. Supp. 3d 486 (W.D. Pa.

---

of distribution, whether a partmaker or assembler, are potentially liable in indemnification." (Doc. No. 65 at 8.) In support of this statement, UCCI cites Burch v. Sears, Roebuck and Co., 467 A.2d 615 (Pa. Super. 1983); Moran v. G. & W. H. Carson, Inc., 586 A.2d 416, 428 (Pa. Super. 1991); and Tromza v. Tecumseh Prods. Co., 378 F.2d 601, 605 (3d Cir. 1967). These cases are distinguishable from the instant case as they involve products liability claims by injured plaintiffs.

2016), instructive.  In that case, the operator of a natural gas well brought a diversity action against a contractor who designed and installed a system for handling fluids at the well site, alleging claims of breach of contract, breach of express warranty, contractual indemnification, and in the alternative, common law indemnification, arising out of leaks at the well site.  Id. at 488-90.  The design contractor asserted a third-party complaint for contribution and common law indemnity against a contractor who excavated the site and a contractor who installed a liner at the site.  Id. at 490.  In granting a motion to dismiss the third-party claims for contribution and common law indemnification against the excavating contractor, the court found that the "gist" of any action concerning the duties owed by the third-party defendant to the plaintiff would be governed by the contract between the parties; accordingly, the gist of the action doctrine would render any tort claim brought against the third-party defendant contractual in nature.  Id. at 494-97.  Therefore, it granted the third-party defendant's motion to dismiss the third-party claims of contribution and indemnity.  Id. at 497-98.  The same analysis applies to UCCI's contribution and common law indemnity claims against Kawasaki.

A review of the relatively summary Third-Party Complaint filed by UCCI reveals that the "gist" of any action that Bombardier could maintain against Kawasaki, and therefore, the "gist" of any potential liability that Kawasaki could have to Bombardier, would be contractual. Accordingly, it follows that Kawasaki cannot be liable to UCCI for contribution as a joint tortfeasor.  In its Third-Party Complaint, UCCI alleges that Kawasaki entered into the Kawasaki Subcontract with Bombardier pursuant to which Bombardier would supply propulsion systems for use in the rail cars Kawasaki was building under the Rail Car Contract.  (Doc. No. 29 ¶¶ 5-6.) It further alleges that Bombardier contracted with UCCI for the design and manufacture of capacitors to be incorporated into the propulsion systems.  (Id. ¶ 7.) The Third-Party Complaint

alleges that if the capacitors failed, the cause of such failure was at least in part "the propulsion

mechanism present in the propulsion system designed by Kawasaki." (Id. ¶ 10.) If there was a

failure in the propulsion mechanism designed by Kawasaki, Kawasaki's potential liability to

Bombardier would be determined by reference to the terms of the Kawasaki Subcontract. The

Third-Party Complaint offers no allegations supporting a reasonable inference that Kawasaki's

potential liability to Bombardier would be governed by any duty other than that owed by virtue

of the Kawasaki Subcontract. See EQT Prod. Co., 179 F. Supp. 3d at 497; Higgins Erectors &

Haulers, Inc. v. E.E. Austin & Son, Inc., 714 F. Supp. 756, 759 (W.D. Pa. 1989) (dismissing

fifth-party complaint where although "couched in negligence terms, it is actually based upon an

alleged breach by [Fifth-Party Defendant] of its contract with [Third-Party Defendant]"); Bruno,

106 A.3d at 69 (determining gist of claims according to the origin of the duty at issue).[9] Because

Kawasaki's only potential liability to Bombardier is contractual, it cannot be held liable to UCCI

for contribution as a joint tortfeasor. Therefore, Kawasaki's motion to dismiss UCCI's Third-

Party claims against it will be granted.

---

[9] The Court is not persuaded by UCCI's argument that a determination of the applicability of the gist of the action doctrine must await discovery, as

> [t]he gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based.

 Good v. Am. Heritage Life Ins. Co., No. 02-cv-3725, 2002 WL 31385820, at *2 (E.D. Pa. Sept. 26, 2002) (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Third-Party Defendant NYCTA's motion to dismiss, and grant Third-Party Defendant Kawasaki's motion to dismiss.  An Order consistent with this Memorandum follows.